Here to give you this honorable appellate court for the 2nd Judicial District is now open, the Honorable Anne T. Normanson, presiding. Please be seated. Your Honors, the only case on the docket this morning is 2-24-0138 of Tasha McKelvey, a Special Administrator of the estate of Chad Purcell, Jr., deceased Plaintiff Appellant. The Joanne Menzies has been agreed in as trustee of the parcel ID 1607301027, commonly known as 1359 West Estate Lane East, Lake Forest, Illinois. Anne Catherine Menzies is defendant's appellant. Excuse me, defendant's appellant. Arguing on behalf of the appellant, Mr. Kevin W. O'Connor. Arguing on behalf of the appellant, Ms. Catherine McKenzie. Arguing on behalf of the appellant, Mr. Thomas C. Kroger. Arguing on behalf of the appellant, Ms. Joanne Menzies. Ms. Rachel B. Tyler. Both sides ready to proceed? Then when you're ready. Kevin O'Connor for the appellant. Your Honors, as you know, this comes on a granting of a motion to dismiss in the trial court. It was a 2-6-15 motion. A 2-6-15 motion looks at the four corners of the complaint. All well-pledged facts are taken as true, and the standard of review is de novo for this court. All reasonable inferences should be granted to the plaintiff or appellant related to this case. At the outset, I just want the court to know we really didn't get started with both defendants until about the third amended complaint. If you look back at the record, the original complaint was against a different defendant. It had to be amended to be proper and to add the proper plaintiff. Then when we got to the second, we added, put in about the minor being, because it was past the statute, that the minor was the person recovering the minor of the decedent, and we added Catherine Menzies. So we really started getting forward on the third amended complaint. What is the duty? So the question becomes first, as the court knows, that the issue of duty is one when we talk about the Supreme Court case of Marshall, and Marshall looking at Hill says, look, the general rule is that no duty exists on the part of an owner or occupier of land to protect entrance from criminal acts of the people, of others. With the exception. What's the exception? The exception is the special relationship, right? Correct. What is the special relationship here? It's the business invitee relationship. Household. This was advertised to the general public. This wasn't a private party. It was not. Go ahead. Was it on Facebook? It was on Facebook, advertised to the general public, saying anybody who wants to come, $15, come on in, come on in to the door. And how do we know that this, how do we know based on the facts that this is something not, like a private party, like somebody has a, the concern is, look, I have a child or somebody throws a party at my private home, I shouldn't be responsible for the criminal acts of third persons. But is Facebook, this is their Facebook friends. She's not putting it out to everybody in the general public. If you have Facebook, is it a Facebook that is open to anybody? Is it, do you have to accept the, do they have to accept the request to be their Facebook friend? How do we know that? It was a general open advertisement to all who wanted to come. That was. But to whom? To whom is the question? To the general public. This is to the general public. This was not to private people. Who could be her Facebook friends, the people who followed her on Facebook? So part of the problem is some of the questions you're asking might be appropriate on a summary judgment because I can't look at her Facebook page on a motion to dismiss. I know that this, and the people involved, my client was not a Facebook friend of these people, but heard about it on general social media advertisement that they could attend a party for $15. They did not have a, my client didn't have a direct connection to these people and were not their Facebook friends. So that's all I can know at this point when we're dealing with a motion to dismiss as opposed to dealing with a motion for summary judgment. I appreciate that, but what's your basis then for claiming that this is a public advertisement? It was open to the public. So if you look at the allegations in my complaint, which is what we're dealing with, I said this was an invitation open to the public. Once that allegation comes through in the complaint, we now have to factually, and I understand the court's concern, at some point later in this case somebody might say, you know what, you factually can't prove that this was open to the public. You factually can't prove those issues. That's a different issue than a motion to dismiss. So that's the only distinction then between this case and Alonzo versus Ramirez, right? Well, there's other distinctions because when you look at That's a big distinction though, right? It is a big distinction. And the other part, when it's open to the public, you owe the high degree of care. That's the case law that describes it. Assuming you established the special relationship, what specific action was taken by the defendants that would have led the decedent to believe he was safe? So when it was advertised, it was also advertised that there's going to be protection, right, coming in, and then when they came to the event, they were screening people for guns, right? That was what was going on. And an ordinary party that's not open to the public that you attend, how often has anybody gone to a party where they're screened for a gun when it's with your friends and family? You don't. When it's open to the public and the marshal court citing to Hill said, when you open something up to the public, you're held to that higher degree of care because you are with the general public comes with the unknown of what you're going to get. But the reason they did the screening is what was said is because they knew some of these people were gangbangers. Correct. So you now know that you are inviting people that are going to show up or you're inviting the public. You know that gangbangers are going to show up because their prior history of an event they went to two weeks earlier. They know that the person who's assigned to be security at the door is a gang member himself, a felon, who is securing and screening people to come in with their guns, yet people were allowed, he let people pass with guns to come into the party. One of the questions and one of the big things that happened with the trial court, if you look at the trial court's order, it puts a footnote and states that the plaintiff didn't allege that it actually happened from one of the party goers. But if you look at paragraph 11, which is on the record, page 474, I allege on or around October 28, 2017 and October 29, because it happened in the overnight hours, now deceased plaintiff Shaq Wilson was shot and killed by a stray bullet from one of the party guests allowed him to set party with a gun by the defendants. I named both defendants. But this happened outside, correct? No, he died outside. It didn't happen outside. So the question about where he was found is a different issue. Do we know who it was that shot him? I don't know. And the police have not, so we had a fight just to get the police report related to this case because they say it's an open investigation. I want to get access to depositions and things to discover who did this or who was the person that did it. What about the defendant's argument that even if you establish everything you just talked about based upon the pleading, that this was not reasonably foreseeable by anyone? That's an interesting question. If you are screening people for guns at the door, you have a concern that people are bringing in guns that might harm people. So by their very nature of saying I'm screening people at the door and I'm hiring security, they at that point are admitting that they know there could be an issue related to it. And, again, it goes back to Marshall and Hill and in this court, I believe in King, that was even recently in 2014. Let's take your argument to the logical end. If you were correct, then every single restaurant in the city of Chicago would have to have security at their doors, regular security to screen for guns because there are shootings almost every day in the city of Chicago. Every day. Not just shootings, mass shootings, robberies, carjackings right in front of restaurants. That's the logical extension of your argument, isn't it? It's not. Because if you have a reasonable expectation that people are going to arrive that are armed, dangerous, which is what's alleged in the complaint, that you know they're going to attend this party, you then provide security. You have a duty to provide that not negligently, right? You have a duty to do it. So if that restaurant had heard, look, the week before, two weeks before, there was a threat that somebody might come in and shoot somebody, that restaurant then goes ahead and hires security, and that restaurant says, don't worry, you're safe, we're going to check everybody for guns before you come in, and then they decide to let people in that do have guns and somebody gets shot, that's a different scenario, and that's the scenario we're facing, not just an open party to where they said, look, if this was a case where there was no screening for guns, nobody thought there was going to be any issue happening, they had no notice of this, and they just threw a party, and then all of a sudden somebody wildly with a gun shot somebody, that's a different scenario. The facts that are alleged here are that they anticipated this ahead of time. They provided for security, although negligently, at the door. One of the people they let in with a gun ended up shooting this young man. So this is a completely different... One of the people that was in the home. That was the allegation in paragraph 11. So when we talk about the four corners of the complaint, that's why I read that specifically, that is the allegation in this case. It was one of the party voters allowed in with a gun that shot him. Otherwise, if that can be stated, that's a conclusion. It's just a conclusion. It's not a conclusion because I'm stating that one of the party voters shot him. So we have witnesses in general that talk about what happened that I have access to. I didn't have access to everything yet, but they talked about it was one of the guests that were let in to the party that caused the shooting. That is why that's alleged in this complaint. So when we look to the four corners, I understand you're saying, look, if you can't prove that allegation, that's a different issue. What he's driving at is you are stating conclusions, not facts. As it stands now, nobody knows who the shooter was. The specific shooter. That would be the important fact, right? Specific versus what? I'm sorry. I'm sorry. Specific shooter versus what? Specific shooter as opposed to what the court was saying. We don't even know if it was somebody outside who wasn't at the party that shot him, right? So I understand that. Look, if it was some passerby that came by and shot him, then it would have no nexus to the case. But that's not the case. The allegation here is that that was a party voter who was let in with a gun that caused the bullets. There was gunfire going on at this place by multiple people. They can't identify whose bullet struck him. So what you're saying is there was a lot of shooting? There was gunfire that broke out at this party between various people that were let in with guns. That is what ended up happening. Whether that was mischief, whether that was intentional to try and hurt somebody, my client ended up getting hit with a bullet. We don't know that aspect yet because we're not past that, but it was the negligence of the defendants that led to him getting that to happen to him. So when you talk about the consequences and the issues, we're really talking about foreseeability as it relates to proximate cause, which I understand. But proximate cause comes, as the court stated, and I can go through each of the cases that describe a motion to dismiss as opposed to a J&OV as opposed to summary judgment. When you're at a motion to dismiss stage, you shouldn't be looking to duty, and I understand there's some foreseeability aspect to that duty because if it's completely foreign to what could possibly happen, then yes, if it's outside the realm of possibilities. But when you look at foreseeability as it relates to proximate cause, that's typically a question for the jury or can be a summary judgment motion if you can't plead enough facts. Let me ask you this. Are you alleging that the same duty was owed by Joanne as well as Catherine? Yes. I mean, that is the complaint. I understand I have a duty to prove that. A lot of what the defendants argued in their briefs are talking about things outside the four corners of the complaint. This was clearly a 2-6-15 motion that was being ruled on. So the only part of a 2-16-19.1 was related to the statute of limitations, which we resolved. The only issue this court resolved was a 2-6-15 motion, and he made it very clear in the record that's all that he was addressing. So we should not be talking about things outside the four corners of the complaint, and all well-plaid facts are to be taken as true. So when we look at the various aspects of it, a plead agency, when we look at paragraphs 5, 6, 11, 22, and 37, I plead the notice element pretty clearly in this case about they knew they had threatened to shoot each other into the, if you look at paragraph 13 aloud, which is page 475 of the record, allowed rival gang members who had threatened to shoot each other into the same party they hosted with loaded guns, had knew or should have known threatened death when possessing loaded guns, paragraph 14. When we go through each of the allegations of the specific acts of negligence, hosted or allowed to be hosted a massive and chaotic party within the residence with inadequate security and allowed rival gang members with guns who had made threats of death to enter the premises. So what happened then in some of the other allegations is the police are down the block. They're monitoring all the parking that's going on. There's 200 guests parking on a pretty well-known street in Lake Forest. They're all lining up. They hear the chaotic thing coming up, and they come up to the door, and they say, who owns this place or who's running this or whatever? Catherine Menzies comes out and says, I got it, I got it. Do you need help? I mean, the police are literally like, do you need help slowing this down, you know, taking it down? She says, no, no, no, no, we're all fine. It's all under control. Several minutes later, my client shot. In that situation and then later, and when I put in the complaint, she actually described to the police, I didn't want to break up the party at that point because I thought the party voters would get mad at me or I thought that my boyfriend would get mad at me, even though it was chaotic and out of control at that point. There's the notice of trying to resolve this issue with the police standing at your front door. Any other questions? No, I have no further questions. No questions at this time. Thank you. You will have an opportunity to reply. Have you decided how you wish to go? Yes, we have. Okay. May it please the Court, Thomas Cronin on behalf of Defendant Epple Lee Catherine Menzies. This is the daughter. This is the daughter, right, and Ms. Pat and I have divided our time equally. Okay. I'm glad my friend, Mr. O'Connor, wants to focus on the four quarters of the complaint because that's exactly what we need to do, and most respectfully, a lot of his argument is not in the complaint, and that's what I want to focus on. It does not allege who the shooter is. It does not allege that even security was undertaken. If we look at the specific allegations, it simply says that Catherine's boyfriend put a post on Facebook, and we'll get to that in a second, that simply said there would be an admission fee of $15, and that they'll be searching at the door. It also says that regarding security, and this is a paragraph 29 and 30, that Catherine's boyfriend wanted to be checked. There was no allegation that there was security, that everybody was specifically there. So a lot of the allegations, the arguments you've heard, are simply not in the complaint. It does not say that any fights broke out or any parties. It does not say that there was any prior belligerence. And remember that the fact, of course— But it says that there was a party two weeks prior that there was. Yes, there was, but there's no allegation that anybody at that two-week party was at this party. So the fact that there was a prior party two weeks ago, there's a lot of allegations about Catherine's boyfriend being difficult and a convicted felon, but he's not the shooter. There's no suggestion that he's the shooter. So the fact that— He's not a defendant. Not a defendant. So does the fact that there was a fee charged mean anything? Well, that brings me to Justice Burkett's question about business invitee. Now, Judge Ortiz did not specifically address the business invitee question, but in the cases that Huland gets in and Yang is presumed business invitee. I submit to you most respectfully that they don't have the allegations of business invitee as well in the complaint, simply because—  Well, the Elizondo case, I think, is instructive. And that is that a fee was charged. It was a party. It was the host of the party with the girl. You know, asked her friends to spread the word around. But, Mr. Cronin, that was a summary judgment. Yes, it was. It was not a motion to dismiss, and the fee was only $3. In addition to that, there were at least five guests who were deposed who said they weren't required to pay a fee. They let them in without the fee. Exactly right. And there's no allegation that the fees were charged to anybody here, except the only allegation about fees here was that it was advertised in Facebook, and that Mr. DiPlano paid the fee. There's no allegation that everybody else paid the fee or nobody paid the fee. In other words, the complaint, the four corners of the complaint, is devoid of any— Shouldn't that be a subject of discovery? Well, I think— On its face, it seems to make a distinction between this case and Alonzo. You know, the argument is that these issues, both the summary judgment and 615, are matters of law. So I don't think necessarily when it rises to a matter of law. And both allegations, whether or not it's a business invitee or not, still goes down to the foreseeability of the duty. And that is clearly a matter of law. And that's what Judge Ortiz found. Judge Ortiz found, I guess in a Yankees, that even when you know there's a motorcycle gang, even when you see a knife, even when there's some belligerence, that that's not enough to establish the duty. Here you have the fact that they charged a fee. They advertised the matter. There was a search at the door. They told people, don't come if you're under dangerous. I mean, and the fact that there were shots at the party two weeks before. You think all of that as a whole is not enough to get us past 2615 and let there be some discoveries. I don't think so, Your Honor. And nor does Judge Ortiz. And here's why. If you look at the cases that this Court and the Supreme Court have found, it's just not enough. And, of course, let's start with the facts of Getzit or Yankees. These are borrowers. Most of these cases happen to be tavern owners. There is no suggestion, and this goes back to the business invitee question. The test for business invitee, one of them, is whether, absent the fee, this would be someone who's in the business of hosting parties or a bar. There is no suggestion, just like in Elizondo, that Catherine and her mother at a house in Lake Forest are like a bar someplace else. This is not a business operation. And the test is whether or not it's in the purpose of the business, and the guests were there for that business purpose. That's not in the complaint at all. But also getting to your question about the sum of these factors, it's just not enough. And if you look at Yankees or Getzit, I actually like the Cook case, because the Cook is a more recent case. It's past, it's post-Marshall. And it holds that even, in this case, this Court found that the attack was, would give rise to a duty, and even though it was outside around a corner in a parking lot. But there, here's what they knew about the attack. They knew his name, his name was Mr. Matthews. They knew he was hostile and shouting obscenities. They knew that he attacked the plaintiff in the bar. They knew that he grabbed the plaintiff right outside the bar. And that the plaintiff himself had asked the bouncers for help in dealing with the attack. On that basis, this Court said, you know what, even though it's outside, even though it's in the parking lot, we're going to give rise to the fact that it was reasonably foreseeable. None of those calibers of facts are alleged anywhere here. So your position is that traditional social host liability case law controls. I think so, but I mean, I think there's a specific, there's specific cases on kind of parties and bar owners. Elizondo we've talked about yet. You know, there's a wealth of law. And putting these factors all together, Judge Ortiz, I think he got it right, did not find that these facts where we don't know who the shooter is, we don't have any allegation of pre-shooting violence. We have force play. That's what's alleged, force play. But that's not the same caliber of cook. That's not the same caliber. It's not even close to what was alleged in Getz and Ergangas. And so for those reasons, I would submit to you that this complaint fails to allege a duty and therefore can and should be dismissed under 2615. I'd like to address, well, you know what, I'm at the end of my time. So if I have any other questions, I'll defer to you. Any questions? I do, but that's, how about the restatement? Well, this is the voluntary undertaking. That's what I was going to address. Mr. O'Connor spends time in his brief on the voluntary undertaking, and Judge Ortiz rejected that as not being pled. And I think, again, Judge Ortiz got it right. First of all, the Lopez case, which under the amendments to Rule 23 may be cited for persuasive authority, makes it clear that voluntary undertaking is a distinct theory and must be separately pled. And, of course, that's not the case at all, and that's what Judge Ortiz says. It was almost like an after-the-fact thing that we have a voluntary undertaking. In voluntary undertaking, the case also, and I'm citing in our brief the Bell case as well as the Rowe case, they make it very clear that you have to plead something specific. Rowe says, for example, may I continue, where the reliance of the other and the third party has induced them to forego other remedies or precautions against such a risk and the harm results from the negligence, as if the actor had created the risk. That's voluntary undertaking. Someone undertakes a duty to protect people, and therefore people who are at that party or whatever rely on that undertaking and get hurt as a result of that reliance. And that's the restatement of 324A. Now, this is Simmons v. Homentos talks about that. Yes, Your Honor, and I've also cited Rowe v. State Bank of Lombard as the Supreme Court case, as well as Bell v. Hutzel. And all of these say the same thing. It's a progressive statement. They're relying on the restatement to say someone can undertake to protect people. The people who are being protected would rely on that and then get hurt as a result. How do we know they weren't relying on it? There's no allegation to rely on. There's nothing in the fifth amendment. Remember, this is the sixth complaint. There's nothing in the complaint that says Mr. Shep Wilson relied on that, that he knew there was security, that anybody actually performed security. And so it's just not enough to suggest a voluntary undertaking under the Supreme Court precedent. Thank you for your time. Thank you. Counsel? Good morning. Rachel Kiley for Julian Menzies. Judge Ortiz was correct here as to my client because she had no reasonable foreseeability and she is further removed than Katherine Menzies. It is clear on the record that she was not residing at the premises. She had never lived there. She was renting it to her adult daughter who was in her 20s, and she did not have possession of the property nor did she have any advance notice that this party was going to take place. But this argument is that all of this is outside the four corners of the complaint, which we should not be looking to. Your Honor, we can stick to the four corners of the complaint, but I would like to point out that we also had a 2619 motion that was pending. My client filed an affidavit and gave a deposition two years prior to the fifth amended complaint being filed, and there are allegations in this complaint with which the appellant knows they're just untrue. She knows that my client did not have possession or control of the property. She knows that my client had no advance notice of the property. So while I agree with you that it's the four corners of the complaint and there's not reasonable foreseeability on those four corners of the complaint as to my client, we can't operate in a vacuum and allow someone to come in on a fifth amended complaint. After the deposition? After the deposition, after the affidavit, and assert things that are simply not true. We can't do that, so we can't just look at this in a vacuum. With all of that being said, in addition to the fact that she had no advance notice of this party and she wasn't at the party two weeks in advance, which, by the way, was not at this Lake Forest residence. It was someplace in Waukegan. He indicates that he pled agency. Saying that Catherine Menzies was an agent of my client Joanne Menzies is not enough to plead agency under the law. It's simply not. Catherine Menzies was in her late 20s and living there with Joanne Menzies' grandchild. They don't say that a principal-agent relationship existed. They don't plead that Joanne Menzies, who would have had to have been the principal, controlled or had the right to control Catherine Menzies. More do they allege that the conduct of Catherine Menzies fell within the scope of the agency. Why don't they plead these things? They can't because they have her affidavit. They have her deposition testimony. It would be sanctionable for them to plead that. They simply cannot ignore sworn testimony. And courts, in considering 2615 motions, have also taken into account judicial admissions that can be derived from deposition testimony, which is what we have here. Not only are there no allegations sufficient to establish agency as to my client Joanne, there's also not a business relationship. She doesn't even have a Facebook account. She had no knowledge that this was being advertised on Facebook. And as my colleague, Mr. Cronin, pointed out, at the end of the day, the courts like the Hill Court look to whether or not this was an event in furtherance of a business purpose. Let's say that 20 people had showed up at this party. Would that have been a business endeavor if only 20 people showed up and we don't know if any of them paid but for Shaft Wilson? I mean, these are illogical conclusions that plaintiff is pleading. And it's a fact-based state. And they have failed with respect to Joanne on agency, with respect to Joanne on business invitee and a special relationship, with respect to Joanne on reasonable foreseeability that a criminal act would take place. How is she to know that a criminal act is going to take place at a party that she has no advance notice of? And in addition to that, how is she supposed to know that an alleged gang member is going to show up and shoot someone there? We don't know it was a gang member. That's what Judge Ortiz also said. We don't know who the shooter is. It's so many steps removed and attenuated for my client. We also don't know if the person was checked by this alleged security that Joanne had no involvement with. They could have just arrived at the party and shot Shaft Wilson. There's no allegations as to that. This complaint is devoid of all of the factual allegations that are necessary to sustain a cause of action as to my client. There was no reason for the judge to allow them to replead for the sixth time. There simply was not. In terms of the voluntary undertaking, it would also be impossible for Joanne to be responsible for that when she had no knowledge of the party, didn't have possession of the premises, and didn't have control over her adult daughter. How can she be responsible for security when she's not there and does not know that the party was going on? These are all the reasons why Judge Ortiz properly dismissed Plaintiff's Complaint as to my client. It goes well beyond the reasonable foreseeability of a criminal act. He was correct that that was not established as to Joanne or Catherine for that matter. Once again, my client, who does not reside at the property and does not have advance notice of the party, is one, two, three steps further removed. The trial court's opinion should be affirmed, and the dismissal with prejudice should stand as to my client, Joanne Menzies. Thank you. I appreciate your argument about Joanne, but isn't it a general principle that although a person does not have a duty to prevent a criminal act of a third party, one does have a duty to refrain from assisting or encouraging such torturous conduct? So here, someone got into the party according to the four corners of the complaint. Somebody got into that party with a gun, and the promise that was made in the Facebook page was that there would be screening for guns. By making that statement and saying that you're going to screen for guns and then allowing a person to come in, isn't that assisting or not necessarily encouraging, but certainly assisting a person who's bent on violence? It is not. Why not? Well, first of all, plaintiff does not allege that Joanne Menzies was at this party. I'm getting past that argument. I'm talking about the four corners of the complaint, assuming that she was aware that there was going to be a party on Facebook and there was a promise of re-screening for guns. Isn't that promise assisting a person who's allowed to go in even though he or she is in possession of a weapon? Wouldn't that be assisting? It would not, Your Honor. Why not? And again, there is no allegation on the four corners that my client was there or had advance notice. So putting all of that aside, she could not be responsible for this alleged promise that is a factual, I'm sorry, alleged promise that is really just a legal conclusion. She didn't know anything about it, and for her to be responsible for it, they would have had to have pled agency properly, which they did not do. There's certain elements to agency, and none of them are pled. You can't just say that your adult daughter was your agent, and that's not legally sufficient. Any other questions before I apologize for that? Thank you. Just quickly in rebuttal, the last argument here, I'm hearing all kinds of things that just said, well, almost every defendant denies the allegations of plaintiff's complaint. Almost every defendant denies the allegations of plaintiff's complaint. That doesn't, it's not a judicial admission against a plaintiff or a defendant to say I deny it. If that was the case, we'd never get past. I understand that, Mr. O'Connor, but with respect to Joanne, you had the opportunity to depose her, did you not? I had the opportunity to depose her alone. Right. Based on her, only the issues in her affidavit. Just because she denies it doesn't allow me to conduct other discovery to determine whether or not what she's saying is true, and I have not been allowed that discovery to determine it. That's why we're at a motion to dismiss, not a motion for summary judgment. I understand that that could come later. If what counsel is saying up here, which is outside the four corners of a complaint, we may have a different motion at a different time, but that's not proper for this. And when we talk about the two cases they rely on, Getson and Yanis, we're talking about the court trying to take a business invitee who has this relationship inside the bar and extend it outside the bar in both of those cases, and to extend that duty beyond the business invitee relationship, and the court says, wait a minute, to extend it, we have to look to foreseeability. And that's what most of these cases are talking about. And that's what Marshall got back to. We're not extending it here. He got shot at the party. But in those cases, in those bar cases, if you will, they were very few, fewer people. I mean, here we have a house with, like, 200 and some people. How is it foreseeable to this girl that somebody is going to go outside and shoot? Now, in those bar cases, you know, the bouncer saw it. In one case they're looking out the window watching it. I mean, how is that foreseeability, how are you transferring that foreseeability in those bar cases, if you will, to this girl in this big house, I'm assuming it's a big-sized house to have 200 people in it. Well, it's not a big house. It's a house, even worse, it's a house with 200 people. How is she watching everything? How is she realizing something is going to go awry? And that's why he looked back at the allegations and the complaints. She knew it was wild, chaotic, was out of control, and yet, and she had the police right there that said, do you want to stand or be? And she said no, and she let it continue. And then the shots clicked. She didn't know at that time. Let what continue? Let the wild, chaotic party continue when it was out of control. That was what the allegation is, out of control in the party. So when we talk about the bar cases and extending it off the property, this is not off the property. The reason the court has to focus on foreseeability is because you're extending the duty that you owe to an invitee beyond the property. And the last issue I'm going to address is the voluntary undertaking and the court citing to Lopez. Lopez did not say it has to be in a separate count. That is not what the Rule 23 order. It says you simply have to have factual allegations that arise to a voluntary undertaking. And I tell you that in this complaint, the voluntary undertaking was alleged in this. They said that they were screening at the doors. They failed to screen at the doors, and one of the people that were let in with the gun is the one who shot him. So the voluntary undertaking is an alternative theory. If the court somehow determines that this is not an invitee relationship, then the voluntary undertaking takes effect. But before that, as an invitee, you owe that duty anyway. Your theory is that the specific actions that defendants took to create a reasonable expectation of safety for the decedent was that they would screen for guns and prevent guns from being available at the party. Were they going to store the guns if there were guns? We know they were being stored. I know this. It isn't alleged in the complaint that they were storing them in the garage. But, you know, that's alleged in the complaint. I didn't see that. It's not. But, I mean, I'm just – so that's my point. You can't go outside. You didn't store them. I know. And it doesn't matter where they're stored, if they're in a locked box, whether they're in a garage that's locked, whether they're – the fact that they're not allowing – we're saying you've got to leave if you have a gun. It doesn't really matter as long as they're not allowing them in with a gun. I mean, that's really the whole point. I mean, you don't allow – in the Marshall Court, Sidington Hill said the precise nature of the injury that occurs is not necessary to be foreseeable. It's only if you generally have, you know, a reasonable knowledge that something could occur that is dangerous, and even though the precise nature is not determined. Thank you. Any other questions? Thank you. Thank you. All right, thank you both for your arguments this morning. We will issue a written decision in due course, and we are adjourned for the day. All rise.